IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BLAINE E. COLEMAN,  )
　)
　Petitioner,  ) Civil Action No. 10-1128
　) Judge Schwab
v.  ) Magistrate Judge Bissoon
　)
RAYMOND SOBINA, *et al.*,  )
　)
　Respondents.  )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed by Blaine E. Coleman ("Petitioner") be dismissed, as it is untimely under 28 U.S.C. § 2244. It is further recommended that a certificate of appealability be denied.

### II. REPORT

On November 20, 1997, Petitioner was convicted, in the Court of Common Pleas of Mercer County, of one count of attempted first-degree murder, 18 Pa. Cons. Stat. Ann. § 901, two counts of aggravated assault, 18 Pa. Cons. Stat. Ann. § 2702, two counts of recklessly endangering another person ("REAP"), 18 Pa. Cons. Stat. Ann. § 2705, and one count of conspiracy to commit first degree murder, 18 Pa. Cons. Stat Ann § 903, for his involvement in the shooting of several people in a car on November 25, 1995. (Doc. 12-81 at 1-2). Additionally, Petitioner was convicted of one count of attempted first-degree murder, three counts of aggravated assault, three counts of REAP, and one count of conspiracy to commit first degree murder, for his involvement in "spraying [a] house with" gunfire late the following

1

night.[1]  Id. at 1-2.  Petitioner was sentenced to serve an aggregate term of confinement of 25½ to 52 years.  (Doc. 12-14 at 4).  Before this Court is Petitioner's petition for writ of habeas corpus (Doc. 1), brought pursuant to 28 U.S.C. § 2254.

A. **Procedural History**

Petitioner was sentenced for the above offenses on January 16, 1998.  (Doc. 12-14 at 1-2).  Petitioner filed notice of appeal on February 6, 1998.  (Doc. 12-16 at 1).  On January 25, 1999, the Pennsylvania Superior Court of Pennsylvania remanded this case so that the trial court could conduct an evidentiary hearing on claims raised by Petitioner of ineffective assistance of counsel during his criminal trial.  (Doc. 12-22 at 1).  The trial court issued an opinion denying relief on May 17, 2000.  (Doc. 12-28 at 11).  Petitioner once again appealed to the Superior Court.  (Doc. 12-29 at 1).  This appeal was denied in a brief memorandum order on March 12, 2002.  (Doc. 12-33 at 2).  Petitioner filed a petition for *allocatur* with the Pennsylvania Supreme Court on April 12, 2002.  (Doc. 12-35 at 1).  This petition was denied on December 24, 2002.  (Doc. 12-36 at 1).

On October 29, 2003, Petitioner filed a petition collaterally attacking his conviction pursuant to the Pennsylvania Post Conviction Relief Act, 42 Pa. Cons. Stat. § 9541, *et seq*., ("PCRA").  (Doc. 12-37 at 1-2, 7).  This was denied by the trial court on July 25, 2005.  (Doc. 12-41 at 1).  Petitioner filed a pro se notice of appeal from this order on August 2, 2005.  (Doc. 12-42 at 1).  On March 20, 2007, the Superior Court vacated the PCRA trial court's order,

---

[1] The charges resulting from both of these incidents were consolidated for Petitioner's trial in 1997.  Additionally, the judge at the criminal trial found that several of the crimes of which Plaintiff was convicted merged, and thus did not impose sentence for them.  See generally Sentencing Order of January 16, 1998 (Doc. 12-14).

2

finding that Petitioner had been abandoned by his counsel during his PCRA proceedings. (Doc. 12-50 at 11). The case was remanded to the PCRA trial court, and Petitioner was appointed new counsel.

On April 18, 2007, Petitioner filed a pro se motion to supplement his original PCRA petition. (Doc. 12-51 at 1, 9). This motion was denied on April 23, 2007, due to the fact that Petitioner had been appointed new counsel. (Doc. 12-52 at 1). Petitioner's counsel filed a motion to supplement the petition on October 2, 2007. (Doc. 12-53 at 1). The PCRA trial court denied this latest PCRA petition on April 28, 2008. (Docs. 12-68 – 12-70). The PCRA trial court amended its order the following day, but maintained its denial of PCRA relief. (Doc. 12-71 at 2). Petitioner filed notice of appeal on May 27, 2008. (Doc. 12-72 at 1-2). The Superior Court affirmed the order of the PCRA trial court on September 9, 2009. (Doc. 12-81 at 1). The record does not indicate that Petitioner sought *allocator* from the Pennsylvania Supreme Court.

During the pendency of Petitioner's appeal from the 2008 denial of his first PCRA petition by the trial court, Petitioner filed a notice of intention to file a second PCRA petition. (Doc. 12-80). This notice was based on Petitioner's discovery that one of the Commonwealth's witnesses at his 1997 criminal trial – Faith Teague – had allegedly "admitted that her testimony was false, untrue and/or inaccurate[.]" Id. ¶ 9. This witness allegedly provided Petitioner with an affidavit admitting this, and recanting her testimony at trial, on February 26, 2009. Id. This "notice" was filed at this time as a protective measure, as the Pennsylvania Rules of Appellate Procedure do not allow a petitioner to file motions with the trial court while an appeal is pending before an appellate court. Id. ¶ 6. Instead, the Supreme Court of Pennsylvania has held that subsequent PCRA petitions based on evidence discovered during appeal should be filed after the resolution of said appeal, and that the applicable statute of limitation is tolled while the appeal is

3

pending.  See Commonwealth v. Lark, 746 A.2d 585, 586-87 (Pa. 2000).  Petitioner filed a second PCRA petition based on this evidence with the trial court on November 6, 2009 – 58 days after the Superior Court's denial of the appeal from his first PCRA petition.  (Doc. 12-82 ¶ 7); (Doc. 12-1 at 44).  This second petition was dismissed by the trial court on February 24, 2010, after an evidentiary hearing.  (Doc. 12-82 ¶ 8); (Doc. 12-1 at 1, 44-45).  There is no indication on the record that Petitioner filed any sort of appeal from this order.  See generally (Doc. 12-1).

Petitioner filed a third PCRA petition on June 11, 2010.  (Doc. 12-82).  Petitioner did not raise any legal of factual arguments collaterally attacking his conviction or sentence in this motion; instead Petitioner appears to have moved that court to modify his sentence based on his good behavior while incarcerated.  The trial court dismissed this petition on July 16, 2010, noting that it lacked any "power or authority to reconsider the sentence . . . ." (Doc. 12-83 at 1).  There is no indication on the record that Petitioner appealed the denial of this third PCRA petition.

Finally, the record indicates that Petitioner placed the instant petition for writ of habeas corpus in the prison mail system at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), on August 18, 2010.  (Doc. 1 at 14).

B.  **The AEDPA's Statute of Limitations**

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed within the applicable statute of limitations.[2]  In 1996, Congress enacted

---

[2] The undersigned is aware that Respondents, in their response to the instant petition, conceded the issue timeliness.  (Doc. 12 at 26).  However, for the reasons stated in Part II.A of this report, their calculation was faulty, and appears to have been based on a misreading of the statute and supporting case law.

(continued. . .)

4

the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, which established, generally, a strict one-year statute of limitations for the filing habeas petitions pursuant to section 2254. The applicable portion of the statute is as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

---

In United States v. Bendolph, the Court of Appeals for the Third Circuit addressed the propriety of a federal court raising the statute of limitations defense *sua sponte* in a habeas case. 409 F.3d 144, 158 (3d Cir. 2005). That court determined that it is proper for the district court to do so, provided that a petitioner is given notice and an opportunity to respond. Id. In cases where an answer has been filed by respondents, a court raising the issue also must analyze any potential prejudice suffered by a petitioner by the raising of the limitations issue *sua sponte*. Id. While Bendolph involved a petition brought pursuant to 28 U.S.C. § 2255, its reasoning has been applied to 2254 cases as well. See, e.g., Nixon v. Beard, 361 F. App'x. 304, 305-06 (3d Cir. 2010).

This report and recommendation provides notice, and the opportunity to file objections provides an opportunity to respond. As for the analysis of prejudice, this Court finds that Petitioner is not prejudiced by this Court's *sua sponte* raising of the statute of limitations. The time between Petitioner's initiation of this habeas petition on August 18, 2010, and the time this Court is *sua sponte* raising the statute of limitations issue (October 2011) – approximately, 14 months – is actually shorter than the period of time in Bendolph, which was almost two years. 409 F.3d at 159. Moreover, what the court of appeals stated in Bendolph applies equally here. During the 14 months between the initiation of this petition and the raising of the statute of limitations "[t]here is no evidence that [Petitioner] had commenced costly or time-consuming discovery, suffered a loss or a diminution of his ability to prepare his case, or lost another litigation opportunity elsewhere." Id. at 169. Also, as in Bendolph, there is no evidence of bad faith on the part of Respondents. If anything, it appears that an incorrect understanding of the law is responsible for Respondents not raising this issue.

Bendolph includes in its analysis of prejudice the question of whether a habeas petitioner had adequate opportunity to respond to the statute of limitations issue after being raised by the court. Id. To the extent that Petitioner needs more time than the 14 days permitted for objections to respond adequately to the statute of limitations issue, he may always seek an extension of time by filing a motion for an extension of time in which to file objections. Accordingly, it is proper for this Court to raise the AEDPA's statute of limitations *sua sponte*.

5

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (as amended).

The Court of Appeals for the Third Circuit has held that the statute of limitations set out in section 2244(d) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004), cert. denied sub nom. Fielder v. Lavan, 543 U.S. 1067 (2005). Thus, in analyzing whether a petition for writ habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger" date for the individual claims raised in the petition. Typically, this is the date that the petitioner's direct review concluded and the judgment became "final" for purposes of triggering the one-year period under § 2244(d)(1)(A). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to § 2244(d)(2). Third, the court

must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented.

The date on which Petitioner's convictions became final for the purposes of this analysis is March 24, 2003 – 90 days after the Pennsylvania Supreme Court denied *allocatur* on December 24, 2002, and after the time to seek *certiorari* from the Supreme Court of the United States had expired. See U.S. Sup. Ct. R. 13. The clock on the AEDPA's one-year statute of limitations began running on that date, and continued for a period of 219 days – until October 29, 2003 – when Petitioner's first PCRA petition was filed.

Because Petitioner did not seek review by the Supreme Court of Pennsylvania of the ultimate dismissal of his first PCRA petition, the clock began running again on October 9, 2009 – 30 days after the Superior Court affirmed the dismissal of the first petition, and after the period to seek *allocator* had run. See Pa. R. Ap. P. 1113(a). The clock ran for an additional 28 days, until Petitioner's second petition for PCRA relief was properly filed with the Court of Common Pleas on November 6, 2009. This petition stopped the clock until March 26, 2010 – 30 days after it was dismissed by the trial court, and the date on which the period of time to appeal this dismissal had run. See Pa. R. Ap. P. 903(a).

As stated above, Petitioner filed a third PCRA petition on June 11, 2010. However, this petition – which was filed more than 12 years after Petitioner was sentenced for his crimes, was not a "a properly filed application for State post-conviction or other collateral review" under the meaning of the statute. See 28 U.S.C. § 2244(d)(2).

The Pennsylvania Post Conviction Relief Act provides, in pertinent part:

> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the

7

> judgment becomes final, unless the petition alleges and the
> petitioner proves that:
>
> (i) the failure to raise the claim previously was the result of
> interference by government officials with the presentation of the
> claim in violation of the Constitution or laws of this
> Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to
> the petitioner and could not have been ascertained by the exercise
> of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized
> by the Supreme Court of the United States or the Supreme Court of
> Pennsylvania after the time period provided in this section and has
> been held by that court to apply retroactively.
>
> (2) Any petition invoking an exception provided in paragraph (1)
> shall be filed within 60 days of the date the claim could have been
> presented.

42 Pa. Cons. Stat. Ann. § 9545(b)(1)-(2). The Pennsylvania courts have adamantly held that the above timing provisions are jurisdictional in nature, and must be construed strictly. See, e.g., Commonwealth v. Abu-Jamal, 941 A.2d 1263, 1267-68 (Pa. 2008) (citing cases). As such, a PCRA trial court is barred even from considering a petition that is not filed within one year of the date that the conviction it is attacking became final (in the case at bar, March 24, 2003), unless that petition falls into one of the three exceptions enumerated in the statute, AND was filed within 60 days of the date that the claim first could have been presented. Abu-Jamal, 941 A.2d at 1267-68. Additionally, the one-year filing period of section 9545(b)(1) is not tolled by the pendency of an extant PCRA petition, or an appeal therefrom.[3] See Commonwealth v.

---

[3] Although, as discussed in Part II.A, supra, the 60-day period for filing a successive PCRA petition based on one of the three exceptions to section 9545(b)(1) is tolled if such a claim first becomes available during the pendency of an appeal from the denial of an earlier PCRA petition.

8

Rienzi, 827 A.2d 369, 371 (Pa. 2003) (treating a pending first PCRA petition as not tolling the one-year filing period with respect to a second petition).

A reading of Petitioner's third PCRA petition shows that it was filed well outside the one-year filing period, and that it did not invoke any of the three above-mentioned statuory exceptions. See (Doc 12-82). As such, the trial court's reasoning that it did not have the "power or authority" to grant the relief sought by Petitioner clearly was grounded in its lack of jurisdiction to entertain the third PCRA petition. (Doc. 12-83 at 1).

State court petitions for collateral review do not toll the AEDPA's one-year statute of limitations if they contain defects that implicate that petition's "'condition[s] to filing,' which go to the application for post-conviction review[.]" Satterfield v. Johnson, 434 F.3d 185, 191 (3d Cir. 2006) (quoting Artuz v. Bennett, 531 U.S. 4, 10 (2000)). Failure to satisfy such conditions "prevents a petition from being 'properly filed,' which in turn prevents application of AEDPA's tolling provision." Satterfield, 434 F.3d at 191. "Untimely filing, absence of jurisdiction, failure to pay fees, and failure to obtain a requisite certificate of appealability are all examples of flaws going to the application for relief itself." Id. (citing Pace v. DiGuglielmo, 544 U.S. 408, 414-15 (2005)). These requirements prevent tolling because they "'go to the very initiation of a petition and a court's ability to consider that petition. . . .'" Satterfield, 434 F.3d at 192 (quoting Pace, 544 U.S. at 417).

Applying the above standard to Petitioner's third PCRA petition, it is clear that the trial court lacked jurisdiction to address the petition on its merits under the Pennsylvania Post Conviction Relief Act. Indeed, the language of the order dismissing the case based on that court's lack of "power or authority" to grant relief, see (Doc. 12-83), is an acknowledgement of that fact. As such, petitioner's third PCRA petition was not "properly filed" under the meaning

of section 2244(d)(2), and the AEDPA's statute of limitations was not tolled during its pendency. Thus, the clock continued to run from March 26, 2010, to August 18, 2010, when the instant petition for writ of habeas corpus was placed in the prison mail system at SCI-Albion – a period of 145 days.

Adding together the periods of time that the clock for the AEDPA's statute of limitations was running – 219 days between the date that Petitioner's convictions became final and the filing of his first PCRA petition, 28 days between the date that the period to seek review from the Pennsylvania Supreme Court of the dismissal of this first PCRA petition lapsed, and the filing of his second PCRA petition, and 145 days between the date the appeals period with respect to his second petition lapsed, and the filing of the instant habeas petition – results in a total of 392 days. This is well outside of the strict one-year filing period allowed by the AEDPA. Accordingly, unless Petitioner can demonstrate grounds for the equitable tolling of the limitations period, his petition should be dismissed as untimely.

C.   **Equitable Tolling**

In Holland v. Florida, the United States Supreme Court recently affirmed the availability of equitable tolling of the AEDPA's one year statute of limitations under appropriate circumstances. 130 S.Ct. 2549 (2010). In its opinion, the Court first underscored that the one year statute of limitations in the AEDPA was not jurisdictional, and "does not set forth 'an inflexible rule requiring dismissal whenever' its 'clock has run.'" Id. at 2560 (quoting Day v. McDonough, 547 U.S. 198, 208 (2006)). Given that habeas corpus is, at its heart, an equitable form of relief, and with no well-defined congressional intent to the contrary, the Court asserted that it is proper, under the principles of equity, to toll the statutory one year period for filing a

petition under section 2254 in certain cases.  Holland, 130 S.Ct. at 2561-62.  In order for a delay in filing a habeas petition to qualify for equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Id. at 2162 (quoting Pace, 544 U.S. at 418).  "Mere excusable neglect is not sufficient."  Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 619 (3d Cir. 1998).  Additionally, "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling."  See Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001) (citing cases).

While Holland did not involve an appeal from a decision of a court within the Third Circuit, it did affirm the practice of courts within this circuit of granting equitable tolling in cases where the above-mentioned conditions have been met.  See, e.g., LaCava v. Kyler, 398 F.3d 271, 275-76 (3d Cir. 2005).  Importantly, the Court of Appeals for the Third Circuit has emphasized that "[e]quitable tolling is appropriate when 'the principles of equity would make the rigid application of a limitation period unfair[.]'"  Id. at 275 (quoting Miller, 145 F.3d at 618).  Additionally, it should be applied only where it is "demanded by sound legal principles as well as the interests of justice."  LaCava, 398 F.3d at 275 (internal quotes and citations omitted).

Applying this standard to the case at bar, it is apparent that there is nothing in the record that would support the equitable tolling of the AEDPA's statute of limitations in this case.  Accordingly, as the instant petition for writ of habeas corpus is untimely, it should be denied.

**D.      Certificate of Appealability**

Finally, a certificate of appealability should be denied because jurists of reason would not find it debatable whether Petitioner's claims were barred by the AEDPA's one-year statute of

limitations.  See, e.g., Slack v. McDaniel, 529 U.S. 473 (2000) (explaining standard for grant of a certificate of appealability where court does not address petition on the merits but on some procedural basis).

### III. CONCLUSION

For the reasons stated above, it is respectfully recommended that the petition for writ of habeas corpus filed by Blaine Coleman be dismissed, and that a certificate of appealability be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this report must be filed by October 21, 2011.  Failure to file objections will waive the right to appeal.  Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

October 7, 2011
    s/Cathy Bissoon
    CATHY BISSOON
    UNITED STATES MAGISTRATE JUDGE

cc:
**BLAINE E. COLEMAN**
DS-6494
SCI Albion
10745 Route 18
Albion, PA 16475